## The City of York, Appellant, v. The Public Service Commission (No. 1).

*Public Service Company Law — Public Service Commission — Water companies—Fire hydrants—Free service.*

A water company has the right to charge for fire protection service furnished a municipality, notwithstanding the fact that in the special act of assembly incorporating the company there is a provision for the installation of fire hydrants, and the company has, since the date of such incorporation, furnished free water to the municipality. The incorporating statute having contained no provision for free service on the part of the company, there is no reason why such free service should be continued. A continuation of such service would only shift the payment of it to other consumers and would be discrimination.

A rate of $60 per fire hydrant is proper where the evidence in support thereof is sufficient. The amount to be charged, under such circumstances, is an administrative question, which the Public Service Commission is best fitted to decide, and unless there be some palpable mistake of fact or law, the Superior Court will not depart from such decision.

Argued November 17, 1924. Appeal, No. 4, March T., 1925, by complainants, from order of the Public Service Commission, Complaint Docket No. 5593, in the case of The City of York v. The Public Service Commission of Pennsylvania and The York Water Company. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Complaint before the Public Service Commission as to reasonableness of rates filed by York Water Company.

The facts are stated in the opinion of the Superior Court.

The Public Service Commission held that the company had the right to make a charge for fire protection service, and that the charge of $60 per year for each hydrant was reasonable and in conformity with law. Complainant appealed.

*Error assigned* was the order of the commission.

*John L. Rouse* and *Charles K. Robinson,* and with them *Samuel K. McCall,* City Solicitor, for appellant.— The charge of $60 per year for each fire hydrant is illegal: Swarthmore Borough v. Public Service Commission, 277 Pa. 472; Sayre Boro. v. Waverly, etc., Trac. Co., 270 Pa. 412; Chambersburg Boro. v. Chambersburg & Gettysburg Elec. Ry. Co., 258 Pa. 57; Collingdale Boro. v. P. R. T. Co., 274 Pa. 124; Norristown v. R. T. & L. Co., 277 Pa. 459; White Haven Boro. v. Water Co., 209 Pa. 166.

*George Hay Kain* and *J. E. B. Cunningham,* and with them *Richard E. Cochran* and *Berne H. Evans,* for appellee.—Even although a franchise ordinance fixed special rates the question of the reasonableness thereof was committed to the Public Service Commission by the legislature: Bellevue Borough v. Ohio Valley Water Co., 245 Pa. 114; Borough of Mt. Union v. Mt. Union Water Co., 256 Pa. 516, affirming 63 Pa. Superior Ct. 337; York Water Co. v. York, 250 Pa. 115; St. Clair Borough v. Tamaqua & Pottsville Electric Ry. Co., 259 Pa. 462; City of Scranton v. Scranton Ry. Co., 268 Pa. 200; Borough of Edgewood v. Wilkinsburg & East Pittsburgh Street Ry. Co., 268 Pa. 201.

Free service rendered without charge to the one who receives it is necessarily paid or compensated for by another, and consequently such service involves a question of discrimination. When this discrimination assumes the character of an unjust discrimination, it falls within the condemnation of the law and requires elimination:

Borough of East Pittsburgh v. Pennsylvania Water Co., 8 Pa. Corp. Rep. 131; Vernon Township v. Public Service Commission, 75 Pa. Superior Ct. 54; Borough of Wilkinsburg v. Public Service Commission, 72 Pa. Superior Ct. 423; Foltz v. Public Service Commission, 73 Pa. Superior Ct. 24; Scranton v. Public Service Commission, 268 Pa. 192, affirming 73 Pa. Superior Ct. 192; Suburban Water Co. v. Oakmont Borough, 268 Pa. 243.

OPINION BY TREXLER, J., March 16, 1925.

The question involved in this suit is whether the York Water Company may charge the City of York for fire protection service and if so, upon what basis such charge should be made. The York Water Company was incorporated by the Act of February 8, 1816, P. L. 42, supplemented by the Act of April 11, 1840, P. L. 300. In the Act of 1816, the 8th section reads: "The said president and managers shall, in such streets or parts of the borough where pipes shall be required, erect hydrants to be used solely for extinguishing fires; and they shall have liberty at all times, where the trunks shall be laid in and through any of the streets and alleys in said borough, to suffer individuals to be supplied with water for domestic or manufacturing use, for such reasonable compensation as shall from time to time be agreed on by the company and such individuals, according to certain uniform rates, which the president and managers shall hereafter adopt, having regard to the probable quantity of water which applicants are likely to consume." In the supplement we read: "That in all cases where the said company shall extend their trunks in such streets of said borough, not heretofore supplied, they shall erect public hydrants, and in supplying individuals with water be governed in all respects, according to the eighth section of the act to which this is a supplement." It is conceded by the counsel for the city that "neither the Act of 1816 nor the Act of 1840 requires the York Water Company to furnish free water to the Borough of York

for fire protection." It appears that for many years the company has made no charge for fire protection and the borough has erected and maintained the hydrants. The inference may be drawn that this arrangement was made so that the free fire protection was given in exchange for the erection and maintenance of the hydrants by the borough, but we cannot be sure of this. It is certain there is no reason why the mandatory provision of the charter imposing the duty on the company to erect the fire hydrants should be ignored and in view of the conclusion hereinafter reached we are of the opinion that the practice of the borough furnishing the hydrants should be discontinued. By the same token there being no provision for free service on the part of the company, there is no reason why free service should be continued. A continuance of such service would only shift the payment of it to other consumers and would be discrimination: Vernon Township v. The Public Service Commission, 75 Pa. Superior Ct. 54.

A rate of $60 per hydrant was approved by the commission. Is it reasonable? The water company called a witness who arrived at the amount to be received for public fire protection by including operation expenses, taxes and earnings and after a careful analysis of the articles chargeable to capacity cost and those applicable to consumption cost, arrived at a charge for public protection under a method known as the comparative plant method. The total capacity cost is equivalent to $44\frac{1}{2}\%$ of the total income and the fire protection charge is approximately $24\%$ of that capacity cost or $10\frac{1}{2}\%$ of the total income. On this basis the company, it was figured, should make a total charge of $38,000—for public fire protection but the engineers determined that this total charge should be fixed at $24,000. The witness for the borough, who did not seem to go into it as thoroughly as the engineer of the company, upon the question whether the fire protection afforded by the company was sufficient, testified that this $24\%$ for fire protection was

excessively high and that a charge of $48 per year per fire hydrant was the correct amount. This is an administrative question which the commission was best fitted to decide and unless there be some palpable mistake of fact or law, we are not inclined to disturb it. The argument is advanced by the city that the provision obliged the company to install the hydrants, that the cost to the company of plant facilities necessary for rendering fire protection service was something which the company agreed to furnish and was bound to furnish in exchange for its charter privileges and that it, therefore, cannot be collected from the city or charged in the estimate as to what shall be charged for the fire hydrants. Granting that a charging for fire protection is not excluded by any language in the charter, we cannot see how this helps the city's side of the case. The company is required to furnish water for household consumption and also for fire protection, but we do not see that this requirement affects the right of the company to charge for fire protection and in ascertaining what it shall charge for such protection it has a right to consider the additional cost of providing such protection in relation to the entire cost of its system and to approximate thereby what should be charged for such service. This is not abrogating any charter provision. The question before us is a matter of rates. This is within the jurisdiction of the Public Service Commission and as the question before us deals directly with rates, even if an agreement of the character claimed by the city was made between the Commonwealth and the water company, it would no longer be binding. A case wherein a company is required to do something in order to get the consent of the city to enter streets is a different proposition and even then when the agreement is directly concerned about rates such agreement is set aside by the Public Service Commission Act.

Nor do we think that the question of the quantity of water consumed must be considered. It is not the ques-

tion as to what water is actually used but is there sufficient available that when the emergency occurs the needs of the city will be supplied? Is the company ready to serve when service is required? The quantity of water required for the purpose may be negligible over a long period of time, but when the crisis arises the company must be ready and the lay-out required to meet that crisis is a proper element to consider in fixing the charge.

The order of the Public Service Commission sustaining the $60 yearly rate for each fire hydrant is affirmed.